UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

OSCAR CAESAR,

              Petitioner,           10 Civ. 402

   -against-                  OPINION

UNITED STATES OF AMERICA,

              Respondent.

----------------------------------------X

A P P E A R A N C E S:

        Pro Se

        OSCAR CAESAR, 56329-054
        U.S.P. Canaan
        P.O. Box 300
        Waymart, PA 18472

        Attorney for Respondent

        PREET BHARARA
        United States Attorney
        Southern District of New York
        One St. Andrew's Plaza
        New York, NY  10007
        By:  Russell Capone, Esq.

**Sweet, D.J.**

Petitioner Oscar Caesar ("Caesar" or the "Petitioner") has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 to vacate or set aside his sentence, which has been opposed by respondent the United States (the "Respondent" or the "Government").

Based on the conclusions set forth below, the petition is denied.

**Prior Proceedings**

Caesar was tried on a one-count indictment, returned by a federal grand jury in the Southern District of New York on May 6, 2004. A jury trial commenced on May 9, 2005. On May 13, 2005, Caesar was convicted of one count of conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A). On the special verdict form convicting Caesar of the sole Count in the indictment, the jury answered "one kilogram or more" to the question "what quantity of heroin was reasonably foreseeable to [Caesar] to be involved?" (Tr. 589.) On January 10, 2007, the Court sentenced Caesar to 120 months'

imprisonment to be followed by five years of supervised release, and imposed a $100 special assessment. On June 19, 2008, the Second Circuit affirmed Caesar's conviction. The Supreme Court denied certiorari on November 17, 2008. This petition followed.

## Discussion

Caesar challenges his conviction on three grounds: (1) that he received ineffective assistance of counsel; (2) that the evidence did not establish that Caesar knew or reasonably could have foreseen that the object of the conspiracy was to distribute one kilogram and more of heroin; and (3) that the Court did not property instruct the jury as to the burden of proof on drug quantity.[1]

## I. Caesar's Petition is Timely

As a threshold matter, the Government argues that Caesar's petition is untimely. A petition seeking collateral relief pursuant to Section 2255 must be filed within one year of "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255. Where a petitioner is convicted, loses on direct

---

[1] In his reply brief, Caesar abandons a fourth ground: that the testimony of one of the government witnesses, Emenson Peters, was not credible. (Pet. Reply Br. 3.)

appeal, and then files a petition for certiorari to the United States Supreme Court, the judgment of conviction becomes final when the Supreme Court denies certiorari. Green v. United States, 260 F.3d 78, 84 (2d Cir. 2001). For pro se prisoners, a motion is deemed filed when delivered into the prison mail system. Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001).

Here, Caesar appealed his conviction to the United States Court of Appeals for the Second Circuit, which denied his appeal in June 2008. Caesar then petitioned the United States Supreme Court for a writ of certiorari, which was denied on November 17, 2008, rendering his conviction final as of that day. The one year period accordingly ran on November 17, 2009.

The Government contends that although it is unclear when Caesar delivered his petition into the prison mail system, it must have happened at some point in between November 27, 2009—when his signature on the Section 2255 petition from is dated—and December 10, 2009, when the petition was received by the Clerk of Court.

Petitioner argues that on November 7, 2009, ten days prior to the deadline, he sent a letter to the Court with a

3

handwritten Section 2255 petition because he was then housed at F.C.I. Cumberland in the Special Housing Unit, where he did not have the necessary forms. (Pet'r Reply Br. 1-2, 5.)  Petitioner additionally asserts that he attempted to contact his attorney on multiple occasions over several weeks prior to that, including leaving him phone messages and writing him several letters, expressly requesting that his attorney file a Section 2255 motion -- none of which Petitioner's counsel  responded to until November 5, 2009, when he refused to file a Section 2255 petition on Caesar's behalf.  (Pet. 5-6.)  The Court's records indicate it was in fact in receipt of Petitioner's communications and referred them to the Pro See Office of the Clerk of the Court, which in turn sent Petitioner a court printed Section 2255 petition from and related documents with a letter dated November 23, 2009 and postmarked November 24, 2009. Caesar noted this correspondence in the Section 2255 petition form he signed on November 27, 2009 (Pet. 6).

The Anti-Terrorism and Effective Death Penalty Act "does not set forth 'an inflexible rule requiring dismissal whenever' its 'clock has run.'" Holland v. Florida, --- U.S. --- -, 130 S.Ct. 2549, 2560, (2010) (quoting Day v. McDonough, 547 U.S. 198, 205 (2006)).  The Supreme Court concluded, as the

4

Second Circuit and all other Courts of Appeals to consider the question had before it, that AEDPA's one-year period to file a writ of habeas corpus acts as a statute of limitations rather than a jurisdictional bar, thus enabling courts to equitably toll that period. See id.; Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir.), cert. denied, 531 U.S. 840 (2000). Equitable tolling, however, is appropriate only in "'rare and exceptional circumstance[s],'" Smith, 208 F.3d at 17 (quoting Turner v. Johnson, 177 F.3d 390, 391-92 (5th Cir. 1999)), and should be awarded "'only upon consideration of all the facts and circumstances.'" Baldayaque v. United States, 338 F.3d 145, 150 (2d Cir. 2003) (quoting Vitarroz Corp. v. Borden, Inc., 644 F.2d 960, 965 (2d Cir. 1981)). Equitable tolling should be evaluated on a "'case-by-case basis'" with the "necessary" "'flexibility'" inherent in equitable procedures "'to meet new situations [that] demand equitable intervention.'" Dillon, 642 F.3d at 362 (quoting Holland, 130 S.Ct. at 2563).

A petitioner bears the burden of affirmatively showing that equitable tolling is warranted. See Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001). Specifically, a petitioner must demonstrate (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance

5

stood in his way and prevented timely filing.  Holland, 130 S.Ct. at 2560-62; Smith, 208 F.3d at 17; see also Hizbullahankhamon, 255 F.3d at 75.

The Second Circuit has "[a]s a general matter . . . set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." Dillon v. Conway, 642 F.3d 358, 363 (2d Cir. 2011). Of note, a petitioner is not entitled to equitable tolling simply because he is incarcerated and faced the routine restrictions of prison life. See Corrigan v. Barbery, 371 F.Supp.2d 325, 330 (W.D.N.Y. 2005); Lindo v. Lefever, 193 F.Supp.2d 659, 663 (E.D.N.Y. 2002). While ordinary attorney errors such as an attorney's miscalculation of the filing deadline do not warrant tolling, see Holland, 130 S.Ct. at 2564; Smaldone v. Senkowski, 273 F.3d 133, 135 (2d Cir. 2001); Geraci v. Senkowski, 211 F.3d 6, 9 (2d Cir. 2000), extraordinary errors such as an attorney failing to file a petition in spite of being specifically directed to do so by his client and not communicating with the client suffice. See Baldayaque, 338 F.3d at 152-53; see also Dillon, 642 F.3d at 363-64.

As to diligence, the degree required to satisfy this standard "is not 'extreme diligence' or 'exceptional diligence,' it is reasonable diligence." Baldayaque, 338 F.3d at 153 (emphasis in original); see also Holland, 130 S.Ct. at ("the diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." (internal citations and quotation marks omitted)).

Here, like the petitioner in Baldayaque, Caesar "did everything that could have been expected of him" and went to more than reasonable ends to have his petition timely filed. Baldayaque, 338 F.3d at 152. While the Section 2255 petition form was filed roughly 10 days after the one year period, because of Petitioner's repeated attempts to contact his attorney and have a timely petition filed on his behalf; his attorney's failure to respond to him; Petitioner's timely communications to the Court swiftly thereafter; the Clerk of the Court's letter and Section 2255 form not being posted until November 24; and Petitioner's signing of the Section 2255 form just three days later on November 27, this Court finds that Caesar's petition is not time barred.[2]   Indeed, in the

---

[2]   In this regard the Court is additionally mindful that while the Pro Se Office of the Clerk of the Court had no mechanism to accept and file a letter petition in November of 2009, such communications are today routinely accepted for filing.

7

alternative, because Caesar's letter to the Court raised the
timeliness issue the Court might have been "empowered, and in
some instances . . . required" to treat his prior communication
as a substantive Section 2255 motion for purposes of timeliness
under ADEPA.  Green, 260 F.3d at 83.


## II.  Petitioner's Ineffective Assistance of Counsel Claim

### A.  The Standard for Ineffective Assistance of Counsel


The Sixth Amendment provides that a criminal defendant
"shall enjoy the right . . . to have the Assistance of Counsel
for his defense."  U.S. Const. Amend. VI.  The Sixth Amendment
"right to counsel is the right to the effective assistance of
counsel."  McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).
The Supreme Court has established a two-part test for evaluating
claims of ineffective assistance.  Strickland v. Washington, 466
U.S. 668, 687 (1984); accord Morales v. United States, 635 F.3d
39, 43 (2d Cir. 2011).  "First, the defendant must show that
counsel's performance was deficient. This requires showing that
counsel made errors so serious that counsel was not functioning
as the 'counsel' guaranteed by the Sixth Amendment."
Strickland, 466 U.S. at 687.  "Second, the defendant must show
that the deficient performance prejudiced the defense."  Id.

8

While the defendant must prove both deficient performance and prejudice, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

Under Strickland's first prong, there is a strong presumption that the assistance rendered by an attorney is objectively reasonable. 466 U.S. at 688-89; Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) ("[J]udicial scrutiny of counsel's performance must be highly deferential") (citing Strickland, 466 U.S. at 689). The performance inquiry examines the reasonableness of counsel's performance "from counsel's perspective at the time" and "considering all the circumstances." Strickland, 466 U.S. at 688, 689.

In this regard, it is well-settled that "[a]ctions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel." Gibbons v. Savage, 555 F.3d 112, 122 (2d Cir. 2009). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" and even strategic choices made after less than

9

complete investigation do not necessarily amount to ineffective assistance, so long as the known facts made it reasonable to believe that further investigation was unnecessary. Id. at 690–91. Moreover, an attorney is under no obligation "to advance every nonfrivolous argument that could be made." Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (citations omitted); see also Jones v. Barnes, 463 U.S. 745, 754 (1983) ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies Anders.").

The second Strickland prong requires an affirmative showing of prejudice. 466 U.S. at 694; Gueits v. Kirkpatrick, 612 F.3d 118, 122 (2d Cir. 2010). The petitioner's burden with respect to prejudice is similarly stringent, as he must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; accord United States v. Caracappa, 614 F.3d 30, 46 (2d Cir. 2010). "[T]here is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." United States v. Cronic, 466 U.S. 648,

10

659 n.26 (1984). In applying this standard, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; accord Wilson v. Mazzuca, 570 F.3d 490, 507 (2d Cir. 2009). "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." Strickland, 466 U.S. at 696.

## B. Petitioner's Ineffective Assistance of Counsel Claims Fail

On Caesar's Section 2255 petition form, he argues that he is entitled to habeas relief not because of any error by his counsel at trial or on appeal, but because his counsel "has given up on [him] and has left [him] to file this motion alone." (Pet. 5.) That is, Caesar submits that he has been deprived of his counsel's assistance in filing the instant petition. While this argument is relevant as to the equitable tolling of AEDPA's one-year time period, this argument fails on the merits because Caesar is not entitled to the assistance of counsel in filing this petition. See Harris v. United States, 367 F.3d 74, 77 (2d Cir. 2004). While the Second Circuit has recognized a claim for ineffective assistance of counsel in connection with a habeas petition where a petitioner seeks relief from the proscription on second or successive petitions after his "lawyer agreed to prosecute a habeas petitioner's case, abandoned it, and

11

consequently deprived the petitioner of any opportunity to be heard at all," id., that is not the case here.   Petitioner's ineffective assistance of counsel claim on this ground therefore fails.

In Petitioner's reply brief, however, he raises a number of additional ineffective assistance claims.   These include that (1) counsel failed to object or file a motion regarding that "[s]treet sales drugs are 'not' pure heroin" but instead "'cut' down to 10% 5% of it's (sic) strength" (Pet'r Reply Br. 10); (2) counsel failed to protect him from the Court's determining the drug amounts "'outside' the jury" (id.); (3) counsel failed to explain to the jury that they alone are the triers of fact who can determine the drug amounts (id.); (4) counsel did not explain to the jury that they could disregard the drug amount stated in the indictment (id.); and (5) counsel did not "defend against the judge 'constructively amending the indictment drug amounts'" (Pet'r Reply Br. 11).   The Court considers these arguments, though only presented in reply, under the lenient standards for the liberal construction of pro se pleadings.   See, e.g., Triestman v. Fed. Bureau of Prisons, 470 F.3d 471 (2d Cir. 2006); Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

With regard to Caesar's first argument, an attorney is under no obligation "to advance every nonfrivolous argument that could be made." Aparicio, 269 F.3d at 96 (citations omitted); see also Jones, 463 U.S. at 754. Here, the statutes under which Petitioner was convicted define the violation as distributing or possessing with intent to distribute "1 kilogram or more of a mixture or substance containing a detectable amount of heroin." 28 U.S.C. § 841(b)(1)(A)(i); see also November 1, 2010 Supplement to the United States Sentencing Commission Guidelines Manual Note (A) to the Drug Quantity Table found at § 2D1.1 ("Unless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." There is no note as to heroin.). Counsel's strategic decision to forgo argument on the quantity of pure heroin in street drugs is accordingly certainly not objectively unreasonable as to satisfy Strickland's first prong. 466 U.S. at 688–89.

Caesar's third and fourth ineffective assistance of counsel claims go to his attorney's representation regarding the sufficiency of the evidence for the jury to conclude that

Petitioner foresaw that his co-conspirators were distributing and possessing with intent to distribute one kilogram and more of heroin as well as the Court's jury charge regarding the weight of the drugs. Both of those underlying issues were raised on direct appeal to the Second Circuit, and both were rejected by that Court. United States v. Delarosa, 314 Fed. Appx. 331, 333 (2d Cir. June 19, 2008). While this might not definitively foreclose Caesar's ineffective assistance claims, Petitioner has raised no additional reason why his counsel's strategic decisions on these issues were unconstitutionally deficient under Strickland's highly deferential standard, 466 U.S. at 688-89, and this Court can see none.

With regards to Petitioner's second and final contentions that his counsel failed to protect him from the Court's determining the drug amounts "'outside' the jury" or "defend against the judge 'constructively amending the indictment drug amounts'" (Pet'r Reply Br. 10-11), it is well settled that "a sentencing judge would also violate section 3553(a) by limiting consideration . . . to the facts found by the jury or admitted by the defendant, instead of considering the applicable Guidelines range, as required by subsection 3553(a)(4), based on the facts found by the court." United

14

States v. Crosby, 397 F.3d 103, 115 (2d Cir. 2005).[3]   Given the circuit precedent and statutory mandate, counsel's decision to forgo Petitioner's suggested argument is not unreasonable. Additionally, as with the previous arguments, Petitioner's contentions as to the weight of the drug quantity evidence, arguably implicated in the Court's sentencing determination, were rejected by the Circuit.   Delarosa, 314 Fed. Appx. at 333. Accordingly, the Court declines to find that counsel's actions were anything but reasonable under Strickland's first prong. 466 U.S. at 688-89.   Moreover, as Petitioner's counsel noted in his appellate brief (Brief for Defendants-Appellants, U.S. v. Delarosa, et al., 06-5674-cr(L), at 16 ("Pet'r Appeal Br.")), in arriving at the offense level for Caesar, the Court rejected the Government's claim that seventeen kilograms of heroin could be attributed to Petitioner, and departed downward from the Guideline range of 151 to 188 months imprisonment to sentence Caesar to 120 months—the mandatory minimum.   Petitioner offers no explanation for how he was prejudiced by his counsel's failure to object to the Court's finding, and it does not appear that Petitioner was in fact prejudiced, as Strickland requires. 466 U.S. at 694.

---

[3] Indeed, the Circuit has since clarified that a "district court may use money attributable to drug transactions to determine the quantity of drugs relevant to sentencing" and that no higher standard than preponderance of the evidence is necessary to infer drug quantity from cash proceeds.   United States v. Jones, 531 F.3d 163, 175-76 (2d Cir. 2008).

Finally, even when considered cumulatively, counsel's actions cannot be said to undermine the reliability of the result here. Cronic, 466 U.S. at 659 n.26.

## III.  Petitioner's Remaining Claims

Caesar's remaining claims go to the sufficiency of the evidence and jury charge regarding the drug quantity element of his conviction.  Each of these arguments was made on direct appeal to the Second Circuit, and each was rejected by the Circuit.  Caesar cannot seek to relitigate these claims pursuant to Section 2255. United States v. Pitcher, 559 F.3d 120, 125 (2d Cir. 2009) (citing United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001)).

Specifically, with respect to Caesar's argument that there was insufficient proof at trial that he reasonably could have foreseen the conspiracy involved one kilogram and more of heroin, this argument was made to the Circuit and rejected by it. (See Pet'r Appeal Br. 27-33); Delarosa, 314 Fed. Appx. at 333 ("We conclude, to the contrary, that the evidence was more than sufficient for a rational jury to find beyond a reasonable doubt that the charged conspiracy existed, that Caesar joined

16

that conspiracy, and that he either knew or could have reasonably foreseen that the conspiracy involved one kilogram and more of heroin.")).

Likewise, on direct appeal, as here, Petitioner argued that this Court failed to instruct the jury that it needed to find the drug quantity beyond a reasonable doubt. (Pet'r Appeal Br. 19-27.)  That argument was rejected as well.  Delarosa, 314 Fed. Appx. at 333 ("We reject the defendants' argument that the jury would have thought it need only find drug quantity by a preponderance of the evidence").[4]  These arguments will therefore not be heard again.  Pitcher, 559 F.3d at 125.

These claims further fail on the merits.  The evidence at trial firmly established that Caesar was a member of an organization that dealt heroin; that that organization dealt massive quantities of heroin, well in excess of one kilogram; and that it was reasonably foreseeable to Caesar that the organization dealt such quantities of heroin.[5]

---

[4] Though Caesar has abandoned this claim in his reply, Petitioner also argued on direct appeal that government witness Emerson Peters should not be credited (Pet'r Appeal Br. at 29-32), but the Circuit held that "[t]he jury was entitled to credit Peters's testimony."  Delarosa, 314 Fed. Appx. at 333.

[5] Caesar's abandoned challenge to the jury having credited Peters' testimony is likewise not borne out by the transcript and even if Peters'

17

At trial, the Government established that an organization known as the "Daly Avenue Organization" dominated the heroin trade along a three-block strip of Daly Avenue in the Bronx between East 179th Street and Bronx Park South. (Tr. 42-44.)  The Organization sold heroin both in bags, which contained a "grain" of heroin, and in "bundles" made up of ten bags. (Tr. 62, 384-85.) The Organization worked in three daily shifts and had a steady stream of customers. (Tr. 151, 353, 275-79.)  Based on trial testimony before the Court, the Organization sold an average of twenty-five bundles of heroin a day, which amounts to approximately half a kilogram per month, although the actual amount could vary from month to month.

Both Emenson Peters and two law enforcement officers testified as to Caesar's role in the Organization. Peters testified that Caesar first began selling heroin on Daly Avenue in 2003 (Tr. 143.) and that because he grew up with the leader of the Organization, Caesar started working as a "manager." (Tr. 142-43, 153.) Peters testified at length about Caesar.  In addition, an undercover officer, Detective Luis Vega of the New York City Police Department, testified that he purchased $90

---

testimony was marked by inconsistencies, it would be entitled to deference. United States v. Glenn, 312 F.3d 58, 64 (2d Cir. 2002).

worth of heroin from Caesar on December 3, 2003. (Tr. 319.) Another law enforcement officer testified that on November 4, 2003, she stopped a vehicle in which Caesar was a passenger for making an illegal turn in Manhattan. (Tr. 410-11.) She testified that during the stop, Caesar jumped out of the vehicle and, after being asked by the officer to return to the vehicle, began to put on his coat. (Tr. 411.) The officer testified that she observed a white object fall from Caesar's coat as he put it on, and the object turned out to be packets of heroin. (Tr. 411-12.)

As the Court of Appeals found, this "evidence was more than sufficient." Delarosa, 314 Fed. Appx. at 333.

With respect to the Court's jury charge regarding drug quantity, as the Second Circuit noted, the jury was repeatedly told that the government must prove the defendant's guilt beyond a reasonable doubt. Id. The Court also told the jury that "beyond a reasonable doubt . . . [is] the burden of proof which applies whenever I say 'the government must prove' or 'must establish' or 'if you find,' any of those phrases, you must read in beyond a reasonable doubt." (Tr. 564.) Further, the jury was told that "on [the] issue [of venue]—and only on this issue—the government need not prove this venue, as it is called, beyond a

19

reasonable doubt, but it must establish it by a mere preponderance of the evidence." (Tr. 562.)   Taken together, the Court charged the jury that it had to find drug quantity beyond a reasonable doubt.  See Delarosa, 314 Fed. Appx. at 333.


**Conclusion**


     For the reasons set forth above, the petition for a writ of habeas corpus is denied.


     Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).


     It is so ordered.


**New York, NY**
**October  6 , 2011**


_____
     **ROBERT W. SWEET**
        **U.S.D.J.**

20